Good morning and may it please the court. My name is Jeffrey Lindenbaum and I am a member of and here representing the law firm Collen IP. Collen IP adopted and sought registration of the mark, a brand name law firm. The trademark office initially refused registration of this to consumers that Collen IP was a firm that practiced in the field of trademarks or intellectual properties. Collen IP responded… CHIEF JUSTICE ROBERTS Isn't the synonym for a trademark a brand name? MR. LINDENBAUM It is and Collen IP agrees with that. CHIEF JUSTICE ROBERTS Then how, if it's almost a generic synonym, is it not descriptive? MR. LINDENBAUM The point was that Collen IP agreed that in fact the brand name portion of the mark was descriptive in connection with the first definition of the mark, which means the trademark. But Collen IP argued that the term was a creative play on words that, as the trademark office found, was in fact descriptive because it did convey that Collen IP is a firm that practices in the field of trademarks. CHIEF JUSTICE ROBERTS So the ends of the double entendre are descriptive? MR. LINDENBAUM Well, that's where we disagree. CHIEF JUSTICE ROBERTS Okay. Tell me how you get around. I think we've already established one end is descriptive and the other one I would see is equally descriptive, but please go ahead. MR. LINDENBAUM That's where I disagree. We agree that yes, in fact, the first term is, but the second term suggests in a tongue-in-cheek manner some vague, desirable characteristic of the firm. It creates a double entendre. In fact, this was first rejected by the trademark office. The trademark office says, no, consumers will not recognize a second meaning of the term because the term must be considered not in the abstract but in connection with the actual applied for goods. Collen IP then appealed that decision. CHIEF JUSTICE ROBERTS Just to make sure we understand the double entendre is that it is a trademark firm, therefore brand name firm, and brand name is also a way of saying it's a very good firm, right? It's representative of something which is so good it's the brand name of that. MR. LINDENBAUM Well, I would say that it suggests in a tongue-in-cheek  manner. In a tongue-in-cheek manner, could you call it the best law firm in the state? CHIEF JUSTICE ROBERTS Well, I think if you called it the best law firm in the state, you've crossed that border into descriptiveness because that's the direct common language term that a consumer would not have to pause or hesitate to understand the meaning. I think when you use the term brand name as opposed to the direct term, there is some requirement. MR. LINDENBAUM But when you say brand name anything, you're saying this stands for it and what makes it it, right? And I'm trying to figure out why that isn't very descriptive and why I would hesitate at all, as you say. CHIEF JUSTICE ROBERTS Yeah, well, I think there are several reasons. And one, I think we work off of the record that's before the court. And in the record, there's no evidence of the term brand name ever being used in connection with a law firm. In fact, when we made an argument to the trademark office that that's a term that could be construed as a suggestion of a second meaning, that the trademark office flatly rejected that. So, I think it supports the argument that consumers will not immediately recognize the term brand name as describing a particular characteristic of the firm. MR. LINDENBAUM But there is evidence that shows brand name being used in a laudatory way with respect to any number of different things of people or companies, correct? CHIEF JUSTICE ROBERTS I would agree with that, that the record shows that there are other instances where the term brand name would be recognized by a consumer to suggest or provide some meaning to those contexts. MR. LINDENBAUM And the fact that the term may have sort of different nuances or shades of meaning, all of which were, in a sense, laudatory or descriptive, shouldn't make any difference, should it? CHIEF JUSTICE ROBERTS Well, I don't believe that all the terms are necessarily laudatory. I think that there is a broad spectrum of definitions that we see in the record being applied to these different categories. For example, the example we cite in our brief is what I think is probably the most recognized term would be using it in connection with consumer products. So we say brand name jeans, which I think would give the meaning of luxury, perhaps trendy, fashionable, current, not necessarily laudatory terms, but terms that have some positive connotation. MR. LINDENBAUM But aren't all those terms descriptive? CHIEF JUSTICE ROBERTS Some of those terms can be, but I don't know that the brand name is not descriptive. MR. LINDENBAUM They're descriptive in some sense. They are all descriptive, aren't they? CHIEF JUSTICE ROBERTS Those terms, if those were the direct terms that were used, could be found to be descriptive. But brand name, there's some hesitation, some pause that must be made before you connect that to the particular services. MR. LINDENBAUM Let's assume that you don't persuade us that the second meaning is not descriptive. So we have a double entendre, both of which, both meanings are descriptive. You're not arguing that just because it has a double entendre means it's not primarily merely descriptive? CHIEF JUSTICE ROBERTS Well, I would argue that, and I would rely  MR. LINDENBAUM So in other words, if it had one meaning that was merely descriptive, that would be no good. But if it has the double entendre, both of which are merely descriptive, well, then the term is not merely descriptive. Is that right? Is that your position? MR. LINDENBAUM My position, yes, that that would make sense in certain contexts, this being one of them. And I point to CHIEF JUSTICE ROBERTS It's a bit of a stretch in my mind. MR. LINDENBAUM Well, I think it recognizes that the trademark office itself rewards creative marks, marks that give people pause and hesitation and have that aha moment where you then realize that there is this double meaning. CHIEF JUSTICE ROBERTS You want to give us a case, you said, that you think supports this proposition. MR. LINDENBAUM Yes. There was a recent decision after the briefing in this case issued by the Trademark Trial Appeal Board, which reversed a refusal of the mark, the best little art walk in town. And there, the Trademark Trial and Appeal Board found that consumers, there was other arguments, but one of the arguments was that consumers would recognize a connection to the well-known Broadway show and movie, The Best Little Whorehouse in Texas, and therefore would not look to the mark as describing the actual characteristics of this was for art exhibits. And so I think a similar argument can be made here where when a consumer readily recognizes that this is a fact of slogan adopted by Colin I.P. to present a creative tongue-in-cheek play on words, that they will recognize that it's not intended to describe the actual characteristics of the firm. And so I think just going back to another point that earlier made, so the reason why it's not descriptive is that there's no immediate connection to some of the definitions that we would see in other contexts. I'm trying to think through what you said. You're saying because there's the double entendre, they, the consumer, will consider this not descriptive? Is that your argument? The consumer will recognize that it's not describing the actual characteristics of the firm, but in fact is a slogan adopted by the firm, which is a play on words. What gives me pause? Isn't that true of any slogan? That any slogan is a slogan as well as being descriptive. So wouldn't any descriptive slogan, as long as it's used as a slogan or a brand name, which is what a slogan often is, thereby escape the descriptiveness requirement of the act? I would say if the slogan has the elements found in this case, this creative play on words, then I would say so, yes. Well, but I thought you argued a moment ago, as long as they recognize it as a slogan, they've escaped the descriptiveness. That would be too broad a statement, wouldn't it? I think to clarify that, they would have to have an additional component, this double entendre, this creative play on words. Excuse me, I interrupted you. What gives me pause is you're speaking in a law school. This is a courtroom. It's also a law school. And, you know, I used to see people wearing t-shirts when I practiced law that said, my lawyer can beat up your lawyer. And it was funny. But, unfortunately, people in society thought it was true. And if lawyers were the assault weapons of civilized society, then our obligations to society were the safety on that weapon. And it strikes me as intemperate to offer that name. Now, I realize lawyer advertising is perfectly acceptable now that lawyers are taking out huge yellow pages, ads, and so on. But, nevertheless, you've got an audience of law students. And you're arguing for double entendres and tongue-in-cheek slogans in an occupation that is still a profession. And that gives me pause. Don't you have some obligation to make sure your slogans aren't descriptive and aren't pejorative in some way or aren't misleading? That, I think, is the way to make that excellent commentary into a question. Well, I think, do we have an obligation other than in trying to overcome a refusal of a registration? Do we have an obligation on a network? No, I think within the context of the law here, don't you have an obligation to make sure that your slogans aren't something other than descriptive in order to qualify for a trademark? Well, I believe ours is. I believe that because the term brand name is not something that's readily associated with a law firm, but rather within other contexts, that there'll be this moment of pause that a consumer will have to take to equate the meaning from what it normally recognizes it and then assign it to an otherwise unrecognizable, unnatural context. So I think that the mark itself, for that reason, creates that necessary pause to bring it over the border to suggest it. I also think that we see in the record that there's many different types of meanings of the term brand name used in the record. And I think that also supports that there'll be a moment of pause and that a consumer must now consider, well, which of these many different meanings are being applied in this case? Thank you. We'll save the rest of your time. Thank you. Ms. Heber. May it please the Court. Collins recognized repeatedly during prosecution that a brand name law firm is laudatory. They told the board in their briefing to the board that it has a common understanding used in the vernacular, that's A-538 to A-539. Mr. Lindenbaum has given us an argument that if the consumer has to pause and think about it, even if both ends are descriptive, that pause is enough to make things other than descriptive. There's something else going on here and the consumer recognizes. It becomes a slogan. It becomes a mark which is deserving of protection. Well, Your Honor, there's no pause here. If there is a pause, the only pause is to say, oh wait, what's the dictionary definition? That's not the relevant pause for descriptiveness purposes. The pause that's relevant is the pause that you have to make between the mark and the services. Does it immediately tell you something about them or do you have to really think about it to understand what the relationship is between the mark and the services? Collin himself here said consumers will understand the second meaning. It's the dictionary meaning. Look at these third party uses of a brand name actor, a brand name politician, a brand name surgeon, a brand name company. It's used in the exact same way in Collin's mark, a brand name law firm. It's laudatory. Laudatory marks have long been held by this court to be merely descriptive. Most recently, it's a decision that issued after the briefing in this case, the Duoprof EnviroTech versus EnviroMedical Devices. The mark there was SNAP Simply Safer and the court actually reversed the board. It was issued on Appeal Number 2012-1050, a precedential decision that was issued August 14th. The court there said the board had found that Simply Safer in that mark produced with a general claim of superiority regarding the safety of the petitioner's syringes there and amounts to mere puffery and the board had found it not merely descriptive. This court reversed. They said mere puffing is laudatory and here SNAP Simply Safer does nothing more than laud the safety of Enviro's products. Just like this court found in Net Designs with the ultimate bike rack, ultimate there was laudatory. So too here brand name is laudatory. So to the extent consumers will recognize that second definition, all it does is laud Collin's legal services. It does nothing more and therefore it's merely descriptive. What is your reaction or comment with respect to the argument that even if the second meaning is also descriptive, the fact that there are two meanings in and of itself means that it's less than merely descriptive. Well, Your Honor, that just contravenes the statute. If you have two meanings of a mark and they're all merely descriptive, it's still merely descriptive. The only way you get out of mere descriptiveness is if the meaning is not immediate and here it's immediate. And we address that argument in our brief, I believe at page 22. And the point of the descriptiveness prohibition in the statute is to leave words that are merely descriptive in the common vernacular for the public to use and for competitors to use to fairly describe their services. But it's important to note too that the statute provides the means to overcome that. If you can show acquired distinctiveness. So Collin could come in. If they use a brand name law firm down the road, if they have evidence that shows that the public now exclusively associates it with them, they could come in and get a registration. They just can't get it now. It's merely descriptive and these words need to remain in the public domain. And I'd just like to address one other point, which it seems that Collin's argument hinges on, at least here today, is that they're the first and only user and that there's not evidence in the record of law firms. This court's case law has never, it has never been the case that the office must show use, actual use by others. You can come up with a name that's merely descriptive. And here we have not only dictionary evidence. It can be descriptive even if it hasn't been used before. I think that's very clear. Yes, that is very clear. And I really don't have anything further. Unless the court has any questions, I'll yield the rest of my time. Thank you, Ms. Eden. Thank you. Mr. Lindenbaum, you have two and a half minutes or so. I just want to address one point, which was to characterize certain statements made by Collin I.P. during the prosecution of the application as admissions that the mark was in fact laudatory. I think it's crucial to understand the context in which those statements were made. The arguments that were being made was responding to the trademark office saying that there was no second meaning at all. If there's, if it's not laudatory, you don't have that second meaning. You don't have the double entendre at all, do you? You kind of have got to have the laudatory meaning or you don't have a double entendre, do you? Well, no, it could be any suggestive term can provide for the double entendre. It doesn't have to necessarily be a laudatory term. I think the well-cited case involved. But brand name gets its second meaning from being laudatory, doesn't it? That's the point I'm making. Well, I think it has the record. Otherwise, why would it be used at all? I think it has several different meanings. What would it be other than the laudatory and descriptive meaning of brand name that we understand? Yeah. Well, first of all. What would brand name be if it's other than laudatory? Just I want to make clear, it's not Colin IT's intent to really use that as a message to say that it's a better, best, great firm. It's really to capture this play on words. But we see in the record that there's actually several different types of meanings when used in other contexts. There's no evidence for law firms, but we see for actors, we see evidence of it referring to highly paid, well-experienced, perhaps overexposed, stereotyped, well-trained. For politicians, we see it in the context of certainly well-known, which is one of the ones. Overexposed and overpaid. That sounds like your comment a minute ago. Law firms, right? Well, I think that's the tongue-in-cheek nature of the mark. Gotcha. And I think probably the best example of the argument I was making earlier, which is that the consumer has to take it from a different context and put it into the context of a law firm, is the only example that doesn't involve an individual, which is at A104, and that discusses Warren Buffett, the billionaire's company, Berkshire Hathaway. And the tagline there is from a New York Times article. It says, Berkshire is still a brand name. And I think that that clearly is an example that when the term is used in connection with a business, such as a law firm or a company, that it's not immediately apparent what that second meaning is. You have to give some thought as to what does that mean, Berkshire is still a brand name. Thank you. All right. Thank you.